**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

---------------------------------------------------------------------

**VERNON BURKS AND LYNDA BURKS,**

*Plaintiffs,*

**v.**

**3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company; ACG CHEMICALS AMERICAS, INC.; AMEREX CORPORATION; ARCHROMA US, INC.; ARKEMA, INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS INC.; CHEMGUARD, INC.; CHEMICALS, INC.; CLARIANT CORPORATION; CORTEVA, INC.; CHUBB FIRE, LTD; DEEPWATER CHEMICALS, INC.; DU PONT DE NEMOURS, INC., f/k/a DowDuPont, Inc.; DYNAX CORPORATION; E.I. DU PONT DE NEMOURS AND COMPANY; KIDDE-FENWAL, INC.; KIDDE P.L.C., INC.; NATION FORD CHEMICAL COMPANY; NATIONAL FOAM, INC., a/k/a Chubb National Foam; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; TYCO FIRE PRODUCTS, LP; UNITED TECHNOLOGIES CORPORATION; UTC FIRE & SECURITIES AMERICAS CORPORATION, INC., f/n/a GE Interlogix, Inc.,**

*Defendants.*

**MDL NO. 2873**

**Master Docket No.: 2:18-mn-2873-RMG**

**JUDGE RICHARD GERGEL**

**Civil Action No:**
  2:23-cv-02465-RMG

**DIRECT FILED COMPLAINT AND JURY DEMAND PURSUANT TO CMO # 3**

1

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, VERNON BURKS and LYNDA BURKS, Plaintiffs herein, by and through their undersigned counsel, allege upon information and belief as follows:

## INTRODUCTION

1.     Plaintiffs brings this action for personal injury damages resulting from exposure to aqueous film-forming foams ("AFFF") containing the toxic chemicals collectively known as per- and polyfluoroalkyl substances ("PFAS"). PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2.     AFFF is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B fires.

3.     Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce, AFFF with knowledge that it contained highly toxic and bio persistent PFAS, which would expose end users of the product to the risks associated with PFAS. Further, defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

4.     PFAS binds to proteins in the blood of humans exposed to the material and remains and persists over long periods of time. Due to their unique chemical structure, PFAS accumulates in the blood and body of exposed individuals.

5.     PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should

have known, that PFAS remain in the human body while presenting significant health risks to humans.

6.     Defendants' PFAS-containing AFFF products were used by the Plaintiff Vernon Burks in their intended manner, without significant change in the products' condition. Plaintiff Vernon Burks was unaware of the dangerous properties of the Defendants' AFFF products and relied on the Defendants' instructions as to the proper handling of the products. Plaintiff Vernon Burks' consumption, inhalation and/or dermal absorption of PFAS from Defendant's AFFF products caused Plaintiff to develop the serious medical conditions and complications alleged herein.

7.     Through this action, Plaintiffs seek to recover compensatory and punitive damages arising out of the permanent and significant damages sustained as a direct result of exposure to Defendants' AFFF products at various locations during the course of Plaintiff Vernon Burks' training and firefighting activities. Plaintiffs further seek injunctive, equitable, and declaratory relief arising from the same.

## JURISIDICTION AND VENUE

8.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332(a), because the Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

9.     Venue is proper in this District Court pursuant to this Court's Case Management Order ("CMO") No. 3. Plaintiffs state that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiffs would have filed this Complaint in the United States District Court Eastern District of Texas, Marshall Division. Further, in accordance with CMO 3, Plaintiffs designate the United States District Court Eastern District of Texas, Marshall Division as the "Home Venue." Venue is originally proper in the District Court pursuant to 28 U.S.C § 1391(a) because it is a judicial district in which Plaintiffs are residents and citizens, a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, and a judicial district in which Defendants conduct business within.

3

**PARTIES**

10.     **Vernon Burks** (hereinafter also referred to as "Plaintiff") is, and at all material times relevant to this cause of action was, a resident and citizen of Longview, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF in training and to extinguish active fires during his working career as a military and/or civilian firefighter. Plaintiff was diagnosed with prostate cancer as a result of exposure to Defendants' AFFF products, and brings this action due to personal injuries sustained as a result of exposure to Defendants AFFF containing PFAS.

11.     **Lynda Burks** (hereinafter also referred to as "Plaintiff Spouse") is, and at all material times relevant to this cause of action was, a resident and citizen of Longview, Texas. Plaintiff Spouse is, and at all material times hereto was, married to Vernon Burks, both of whom resided together in the same dwelling. Plaintiff Spouse brings this action for the loss of consortium and services directly resulting from her husband's injuries and damages sustained as a result of his exposure to Defendants' AFFF products.

12.     Each of the following Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, promotors and/or sellers of PFAS-containing AFFF or underlying PFAS containing PFOA or PFOS chemicals used in AFFF production.  The following Defendants, at all times relevant to this cause of action, manufactured, designed, marketed, distributed, released, instructed, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations, including Texas, for use in fighting fires such that each Defendant knew or should have known said products would be delivered to areas for active use by firefighters, including Plaintiff, during the course of training and firefighting activities.

13.     Defendant, **3M Company**, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a corporation organized and operating under the laws of the state of Delaware and conducts business throughout the United States, including Texas. 3M has its principal place of business at 3M

4

Center, St. Paul, Minnesota 55133. At all relevant times herein, 3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subjectof this Complaint. Further, defendant 3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

14.     Defendant **AGC Chemicals Americas, Inc.** ("AGC") is a corporation organized and operating under the laws of the state of Delaware, and conducts business throughout the United States, including Texas. AGC has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC operates throughout the United States, manufacturing glass, electronic displays and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates— including those used in AFFF. At all material times hereto, AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

15.     Defendant **Amerex Corporation** ("Amerex") is a corporation organized and operating under the laws of the state of Alabama, and conducts business throughout the United States, including Texas. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173. Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing

PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

16.     Defendant **Archroma U.S., Inc.** ("Archroma") is a corporation organized and operating under the law of the state of Delaware, and conducts business throughout the United States, including Texas. Archroma has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205. At all material times hereto, Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

17.     Defendant **Arkema, Inc.** ("Arkema") is a corporation organized and operating under the laws of the state of Pennsylvania, and conducts business throughout the United States, including Texas. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont (listed below) in 2002. At all material times hereto, Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which

contained PFAS for use in firefighting.

18.     Defendant **BASF Corporation** ("BASF") is a corporation organized and operating under the laws of the State of Delaware, and conducts business throughout the United States, including Texas. BASF's principal place of business is located at 100 Park Avenue, Florham Park, New Jersey 07932. On information and belief, on or about 2008, BASF acquired Ciba, Inc. (f/k/a Ciba Specialty Chemicals Corporation) and is the successor-in-interest to Ciba, Inc. On information and belief, BASF is the largest affiliate of BASF SE and the second largest producer and marketer of chemicals and related products in North America. At all material times hereto, on information and belief, BASF has designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

19.     Defendant **Buckeye Fire Equipment Company** ("Buckeye") is a corporation organized and operating under the laws of the state of Ohio, and conducts business throughout the United States, including Texas. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. At all material times hereto, Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

7

20. Defendant **Carrier Global Corporation** ("Carrier") is a corporation organized and operating under the laws of the state of Delaware, and conducts business throughout the United States, including Texas. Carrier has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed in March 2020 and is the parent company and/or successor in interest to Kidde-Fenwal, Inc., a manufacturer of AFFF, and is legally responsible for the design, manufacture, marketing, distribution and sale of AFFF which contained PFAS for use in firefighting. At all material times hereto, Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

21. Defendant **ChemDesign Products, Inc.** ("ChemDesign") is a corporation organized and operating under the laws of the state of Texas, and conducts business throughout the United States, including Texas. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143. At all material times hereto, ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

22. Defendant **Chemguard, Inc.** ("Chemguard") is a corporation organized under the

8

laws of the state of Texas, and conducts business throughout the United States, including Texas. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. At all material times hereto, Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

23.     Defendant **Chemicals, Inc.** ("Chemicals") is a corporation organized and operating under the laws of the state of Texas, and conducts business throughout the United States, including Texas. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521. On information and belief, at all material times hereto, Chemicals designed, marketed, developed, manufactured, supplied, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are thesubject of this Complaint. Further, defendant Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

24.     Defendant **Clariant Corporation** ("Clariant") is a corporation organized and operating under the laws of the state of New York, and conducts business throughout the United States, including Texas. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205. On information and belief, Clariant is the successor in interest to the specialty chemicals business of Sandoz Chemical Corporation ("Sandoz"), which spun off its specialty chemicals business to form Clariant in 1995. At all material times hereto, Clariant designed, marketed, developed, manufactured,

distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

25.     Defendant **Corteva, Inc.** ("Corteva") is a corporation organized and operating under the laws of the state of Delaware, and conducts business throughout the United States, including Texas. Corteva's principle place of business is 974 Center Rd., Wilmington, Delaware 19805. Upon information and belief, Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise. At all material times hereto, Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

26.     Defendant **Chubb Fire, Ltd** ("Chub") is a foreign limited company with offices at Littleton Rd, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210, and conducts business throughout the United States, including Texas. Upon information and belief, Chubb is or has been composed of several different subsidiaries and/or divisions, including, but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC and/or Chubb National Foam, Inc. At all material times hereto, Chubb designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the

subject of this Complaint. Further, defendant Chub designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

27.     Defendant **Deepwater Chemicals, Inc.** ("Deepwater") is a corporation organized and operating under the laws of the state of Delaware, and conducts business throughout the United States, including Texas. Deepwater's principal place of business is at 196122 E County Road 735, Woodward, Oklahoma 73801. On information and belief, at all material times hereto, Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

28.     Defendant **Du Pont de Nemours Inc.** (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a corporation organized and operating under the laws of the state of Delaware, and conducts business throughout the United States, including Texas. DowDuPont, has its principal place of business at 974 Center Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDupont was created in 2015 to transfer Chemours andDuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers. DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant DownDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or

11

products added to AFFF which contained PFAS for use in firefighting.

29.    Defendant **Dynax Corporation** ("Dynax") is a corporation organized and operating under the laws of the state of Delaware, and conducts business throughout the United States, including Texas. Dynax's principal place of business is located at 103 Fairview Park Drive, Elmsford, New York, 10523-1544. On information and belief, Dynax entered the AFFF business in 1991 and quickly became a leading global producer of flurosurfactants and flurochemical foam stabilizers used in firefighting foam agents. At all material times hereto, Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, soldand/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

30.    Defendant **E. I. du Pont de Nemours and Company** ("DuPont"), is a corporation organized and operating under the laws of the state of Delaware and conducts business throughout the United States, including Texas. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898. At all material times hereto, DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

31.    Defendant **Kidde-Fenwal, Inc.** ("Kidde-Fenwal") is a corporation organized and operating under the laws of the State of Delaware and conducts business throughout the United States, including Texas. Kidde-Fenwal has its principal place of business at One Financial Plaza, Hartford,

Connecticut 06101. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire"). Kidde-Fenwal designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant Kidde-Fenwal designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

32.     Defendant **Kidde P.L.C., Inc.** ("Kidde") is a corporation organized and existing under the laws of the State of Delaware, and conducts business throughout the United States, including Texas. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde was formerly known as Williams Holdings, Inc. and/or Williams US, Inc. At all material times hereto, Kidde designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant Kidde designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

33.     Defendant **Nation Ford Chemical Company** ("Nation Ford") is a company organized and operating under the laws of the state of South Carolina, and conducts business throughout the United States, including Texas. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715. At all material times hereto, Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced

instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

34.    Defendant **National Foam, Inc.** (a/k/a Chubb National Foam) (collectively "National Foam") is a corporation organized and operating under the laws of the state of Delaware and conducts business throughout the United States, including Texas. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501. Upon information and belief, National Foam is a subsidiary of Angus International Safety Group, Ltd. and the successor in interest to Angus Fire Armour Corporation, and manufactures the Angus brand of products. References to "National Foam" herein shall also refer to AFFF commercially manufactured, marketed and sold under the "Angus" name and "Angus Fire" brand.  At all times relevant to this cause of action, National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

35.    Defendant **The Chemours Company** ("Chemours"), is a corporation organized and operating under the laws of the state of Delaware, and conducts business throughout the United States, including Texas. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898.  The Chemours Company was incorporated as a subsidiary of E.I. du Pont  De Nemours & Co. as of April 30, 2015. From that time until July, 2015, The Chemours Company was a wholly-owned subsidiary of E.I. du Pont De Nemours & Co. In July, 2015, E.I. Du Pont deNemours & Co. spun off The Chemours Company and transferred to The Chemours Company its "performance chemicals" business line, which includes its fluoroproducts business, distributing shares of The Chemours Company stock to

14

E.I. du Pont De Nemours & Co. stockholders, and The Chemours Company has since been an independent, publicly traded company. At all material times hereto Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products addedto AFFF which contained PFAS for use in firefighting.

36.    Defendant **The Chemours Company FC, LLC** ("Chemours FC"), a successor in interest to DuPont Chemical and subsidiary of The Chemours Company, is a corporation organized and operating under the laws of the state of Delaware, and conducts business throughout the United States, including Texas. Chemours FC has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899. Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

37.    Defendant **Tyco Fire Products, LP** ("Tyco") is a limited partnership organized and operating under the laws of the state of Delaware, and conducts business throughout the United States, including Texas. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS, and is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). Beginning in or around 1975, Ansul manufactured and/or

15

distributed and sold AFFF that contained perfluorocarbons ("PFCs"), a group of chemicals closely related to PFAS that shrare common findings with PFAS, that included but was not limited to PFOA and PFOS. After Tyco acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute and sell AFFF that contained PFCs, that included but was not limited to PFOA and PFOS. Upon information and belief, Tyco acquired the Chemguard brand in 2011 and continues to sell Chemguard AFFF products through its Chemguard Specialty Chemicals division. At all times relevant to this cause of action, Tyco/Ansul designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant Tyco designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, soldand/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

38.    Defendant **United Technologies Corporation** ("United Technologies") is a corporation organized and existing under the laws of the State of Delaware, and conducts business throughout the United States, including Texas. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032. At all material times hereto, United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFFcontaining PFAS that are the subject of this Complaint. Further, defendant United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

39.    Defendant **UTC Fire & Security Americas Corporation, Inc.** (f/n/a GE Interlogix, Inc.) ("UTC") is a corporation organized and existing under the laws of the state of North

Carolina, and conducts business throughout the United States, including Texas. UTC has its principle place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. At all material times hereto, UTC designed, marketed, developed, manufactured, distributed, released,trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFFcontaining PFAS that are the subject of this Complaint. Further, defendant UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

40.     Defendants 3M Company, AGC, Amerex, Archroma, Arkema, BASF, Buckeye, Carrier, ChemDesign, Chemguard, Chemicals, Clariant, Corteva, Chubb, Deepwater, DowDuPont, Dynax, DuPont, Kidde-Fenwal, Kidde, Nation Ford, National Foam, Chemours, Chemours FC, Tyco, United Technologies, and UTC are collectively referred to as "Defendant" or "Defendants." The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

41.     Defendants, among other things: (a) designed, manufactured, formulated, promoted, marketed, sold, and/or otherwise supplied (directly or indirectly) PFAS-containing AFFF and/or PFAS for use in AFFF and/or chemical precursors to PFOA/PFOS that were used in firefighting training exercises and live fire emergencies which are the subject of this complaint and which ultimately caused harm to Plaintiff; (b) acted with actual or constructive knowledge that PFAS- containing AFFF and/or PFAS for use in AFFF and/or chemical precursors to PFOA/PFOS would be used in firefighting training exercises and live fire emergencies which are the subject of this complaint; (c) are legally responsible for and committed each of the multiple tortious and wrongful acts alleged in this Complaint; and (d) promoted PFAS-containing AFFF and/or PFAS for use in AFFF and/or chemical precursors to PFOA/PFOS, despite the availability  of reasonable, technologically feasible alternatives and their actual or constructive knowledge that the injuries alleged in this Complaint would be the inevitable result of their conduct.

42.     When reference is made in this Complaint to any act or omission of any of the

Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

43.    The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally, unless otherwise stated.

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

### A.    AQUEOUS FILM-FORMING FOAM

44.    Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish hydrocarbon fuel-based fires.

45.    AFFF-containing fluorinated surfactants are believed to have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving the fire of oxygen.

46.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

47.    Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled AFFF containing toxic PFAS or underlying PFAS containing chemicals used in AFFF production that were used by entities around the country, including military, county, and municipal firefighting departments, as well as military bases.

48.    Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause the contamination of Plaintiff's blood and/or body with

18

PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiff.

49.     AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

50.     PFAS are a family of chemical compounds containing fluorine and carbon atoms.

51.     PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

52.     Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

**B.     AFFF/PFAS HAZARDOUS EFFECTS ON HUMAN HEALTH & DEFENDANTS' KNOWLEDGE OF SUCH ADVERSE CONDITIONS**

53.     Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to cause injury and damage to consumers, including Plaintiff, who are exposed to it.

54.     AFFF and its components are associated with a wide variety of adverse health effects in humans.

55.     Exposure to Defendants' AFFF/Component Products have been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, testicular tumors, pancreatic cancer, prostate cancer, kidney cancer, leukemia, lymphoma, bladder cancer, ovarian cancer, colon cancer, thyroid disease, birth defects and infertility, among others.

56.     By at least the end of the 1960s, animal toxicity testing performed by Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

57.     By at least the end of the 1960s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that such materials, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

58.     By at least the end of the 1970s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

59.     By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

60.     In 1980, 3M published data in peer-reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.

61.     By the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense. Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed through the skin, into the lungs, and into the gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens which

20

cause genetic damage.

62.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.

63.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."

64.    It was understood by Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known and would not occur in humans.

65.    By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

66.    By at least the end of the 1980s, Defendants, including at least 3M and DuPont, understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life; meaning it would take a very long time before even half of the material would start to be eliminated, which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time,

particularly if any level of exposure continued.

67.    By at least the end of the 1990s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

68.    By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

69.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

70.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."

71.    By at least 2010, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts. Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-

diagnosed high cholesterol, Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

72.     By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from its Washington Works plant reviewed the available scientific evidence and concluded that a "probable link" exists between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia. By October 2012, the C8 Science Panel concluded that a probable link also exists between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

73.     In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

74.     When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

75.     After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

76.     Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

77.     By at least the mid-2010s, Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

78.     Research and testing performed by and/or on behalf of Defendants  making and/or using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

79.     Nevertheless, Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain PFAS, in human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

80.     At all relevant times, Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards Defendants deem acceptable.

81.     At all relevant times, Defendants shared and/or should have shared among themselves all relevant information relating to the presence, bio persistence, and bioaccumulation of PFAS

in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

82.    As of the present date, blood serum testing and analysis by Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

83.    There is no naturally-occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants

84.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiff from discovering the existence and extent of any injuries/harm as alleged herein.

85.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

86.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiff to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in Plaintiff's blood.

87.    At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use,

and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

88.    To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

89.    To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

90.    Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

91.    Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of AFFF containing PFAS would result in the contamination of the blood and/or body of Plaintiff with PFAS, and the bio persistence and bioaccumulation of such PFAS in Plaintiff's blood and/or body.

92.    Defendants were and/or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the blood and/or body

26

of Plaintiff would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiff.

93.    Notwithstanding Defendants' knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, distributed, and/or sold fluorochemical products; (2) failed to issue reasonable instructions on how fluorochemical products should be used and disposed of in AFFF; (3) failed to recall and/or warn the users of fluorochemical products, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products, notwithstanding the fact that Defendants knew the foreseeable identities of the purchasers and end-users of the fluorochemical products, as well as its final fate in water, biota, and humans.

94.    Defendants did not seek or obtain permission or consent from Plaintiff before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiff's exposure to AFFF and the contamination of Plaintiff's blood and/or body with PFAS materials, and resulting bio persistence and bioaccumulation of such PFAS in Plaintiff's blood and/or body.

C.    **DEFENDANTS' HISTORY OF MANUFACTURING AND SELLING AFFF PRODUCTS**

95.    3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s. In the 1960s, 3M used its fluorination process to develop AFFF.

96.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

97.    National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s.

98.    Buckeye began to manufacture, market, and sell AFFF in the 2000s.

99.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and

related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products are safe," and that 3M's decision was "based on [its] principles of responsible environment management." 3M further stated that "the presence of these materials at [] very low levels does not pose a human health or environmental risk." In communications with the EPA at that time, 3M also stated that it had "concluded that…other business opportunities were more deserving of the company's energies and attention…"

100.    Following 3M's exit from the AFFF market, the remaining Defendants continued to manufacture and sell AFFF that contained PFAS and/or its precursors.

101.    Defendants knew their customers warehoused large stockpiles of AFFF. In fact, Defendants marketed their AFFF products by touting its shelf-life. Even after Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans following exposure, Defendants concealed the true nature of PFAS. While Defendants phased out production or transitioned to other formulas, they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors. Defendants further did not act to get their harmful products off the market.

102.    Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian and/or military employers that use of and/or exposure to Defendants' AFFF products containing PFAS and/or its precursors would pose a danger to human health

103.    Plaintiff directly used, was exposed, and/or was given AFFF/Component Products to help fight fires on a regular basis.

104.    Plaintiff was never informed that this product was inherently dangerous. Nor was Plaintiff warned about the known health risks associated with this product.

105.    Plaintiff never received or was told to use any protective gear to guard against the known dangerous propensities of this product.

106.    Defendants have known of the health hazards associated with AFFF/Component

Products for decades and that in their intended and/or common use would harm human health.

107.    Information regarding AFFF/Component Products was readily accessible to each of the above-referenced Defendants for decades because each is an expert in the field of AFFF/Component Product manufacturing, and each has detailed information and understanding about the chemical compounds that form AFFF products.

108.    The AFFF Defendants' manufacture, distribution and/or sale of AFFF/Component Products resulted in the Plaintiff and other individuals who came in contact with the chemical to develop serious injuries, including prostate cancer.

109.    The AFFF Defendants through their manufacturing, distribution and/or sale of AFFF, and through their involvement and/or participation in the creation of training and instructional materials and activities, knew, foresaw, and/or should have known and/or foreseen that the Plaintiff and those similarly situated would be harmed.

110.    The AFFF Defendants' products were unreasonably dangerous and Defendants failed to warn of this danger.

        **D.**      **VERNON BURKS' EXPOSURE TO AFFF**

111.    From approximately 1977 to Present, Plaintiff Vernon Burks has worked as a volunteer firefighter for various volunteer fire departments, located in and around Lexington, Texas.

112.    Upon information and believe, the volunteer fire departments stored and used Defendants' AFFF containing PFOA and/or PFOS chemicals and/or their precursor chemicals in fire training, response training, and/or active response exercises for an extensive period of time.

113.    From approximately 1994 to Present, Plaintiff Vernon Burks has worked as an Instructor at Recruit Fire Academy with Texas A&M University, located in College State, Texas.

114.    Upon information and believe, the Recruit Fire Academy with Texas A&M University stored and used Defendants' AFFF containing PFOA and/or PFOS chemicals and/or their

precursor chemicals in fire training, response training, and/or active response exercises for an extensive period of time.

115.    From approximately 1994 to 2015, Plaintiff Vernon Burks worked as a Firefighter at Eastman Chemical, located in Longview, Texas.

116.    Upon information and believe, Eastman Chemical stored and used Defendants' AFFF containing PFOA and/or PFOS chemicals and/or their precursor chemicals in fire training, response training, and/or active response exercises for an extensive period of time.

117.    Throughout Plaintiff's civilian firefighting career, Plaintiff conducted routine trainings and live firefighting exercises using, being exposed to, and touching/inhaling/ingesting Defendants' AFFF and fluorochemical products.

118.    During Plaintiff's use of Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals, Plaintiff was exposed to, came into contact with, inhaled and/or ingested such products, and the PFOA and/or PFOS and/or their precursor chemicals accumulated in Plaintiff's body.

119.    At no point during Plaintiff's trainings or career did Plaintiff receive any warning that Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals were toxic or carcinogenic.

120.    In or around June 2021, Plaintiff Vernon Burks' doctors diagnosed him with prostate cancer.

121.    In or around July 2021, Plaintiff Vernon Brown underwent 44 radiation treatments at Longview Cancer Center in Longview, Texas, in attempt to treat his prostate cancer.

122.    To this very day, Plaintiff Vernon Burks requires monthly follow-ups with his doctors to monitor his condition.

123.    In or around July 2021, Plaintiff discovered that his prostate cancer was caused

by his exposure to Defendants' fluorochemical and AFFF firefighting foam products containing PFAS, PFOA and/or PFOS, and/or their precursor chemicals.

124.     Plaintiff suffered, and continues to suffer, the effects of his illness proximately caused by exposure to Defendants' fluorochemical and AFFF products.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE

125.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

126.     At all relevant times, Defendants had a duty to individuals, including Plaintiff, to exercise reasonable, ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to the AFFF product.

127.     Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of the AFFF products or underlying PFAS containing chemicals used in AFFF production in one or more of the following respects:

(a) failing to design the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

(b) failing to use reasonable care in the testing of the products so as to avoid an unreasonablerisk of harm to individuals, including Plaintiff;

(c) failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

(d) failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

(e) failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

(f)  otherwise negligently or carelessly designing, manufacturing, marketing, distributing, and/or warning; and

(g)  In selling and or distributing a product which was inherently dangerous to the public.

128.     As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

129.     Each and every one of the foregoing acts or omissions, taken singularly or in any combination, proximately caused Plaintiffs' injuries and damages, more particularly set forth below.

WHEREFORE, Plaintiffs pray judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II – BATTERY

130.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

131.     At all relevant times, Defendants possessed knowledge that the AFFF containing PFAS which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio-persistent, bio-accumulative, toxic, carcinogenic, and/or otherwise harmful/injurious, and that their continued manufacture, use, sale, handling, release, and distribution would result in consumers, including Plaintiff, having PFAS in their blood, and the bio-persistence and bioaccumulation of such PFAS in consumers, including Plaintiff's, blood.

132.     However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not

limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiff accumulating PFAS in Plaintiff's blood and/or body, and such PFAS persisting and accumulating in Plaintiff's blood and/or body.

133.    Defendants did not seek or obtain permission or consent from Plaintiff to put or allow PFAS materials into Plaintiff's blood and/or body, or to persist in and/or accumulate in Plaintiff's blood and/or body.

134.    Entry into, persistence in, and accumulation of such PFAS in Plaintiff's body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiff's person and unreasonably interferes with Plaintiff's rightful use and possession of Plaintiff's blood and/or body.

135.    At all relevant times, the PFAS present in the blood of Plaintiff originated from Defendants' acts and/or omissions.

136.    Defendants continue to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiff that resulted in persisting and accumulating levels of PFAS in Plaintiff's blood.

137.    Plaintiff, and any reasonable person, would find the contact at issue harmful and/or offensive.

138.    Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto and/or into Plaintiff's blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

139.    Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiff's blood and/or body.

140.    The continued presence, persistence, and accumulation of PFAS in the blood

and/or body of Plaintiff is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

141.     The presence of PFAS in the blood and/or body of Plaintiff altered the structure and/or function of such blood and/or body parts and resulted in cancer.

142.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered physical injury for which Defendants are therefore liable.

## COUNT III – INADEQUATE WARNING

143.     Plaintiffs hereby incorporate by reference the allegations contained in the  preceding paragraphs of this Complaint as if fully restated herein.

144.     Defendants knew or should have known: (a) exposure to AFFF containing PFAS was hazardous to human health; (b) the manner in which they were designing, marketing, developing, manufacturing, distributing, releasing, training, instructing, promoting, and selling AFFF containing PFAS was hazardous to human health; and (c) the manner in which they were designing, developing, manufacturing, marketing, distributing, releasing, training, instructing, promotion and selling AFFF containing PFAS would result in the contamination of Plaintiff's blood and/or body as a result of exposure.

145.     AFFF's persistence, mobility, bioaccumulative potential, and the medical and scientific link between PFAS chemicals and numerous serious medical conditions should have alerted Defendants to warn others.

146.     Defendants had a duty to warn of the hazards associated with AFFF containing PFAS entering the blood and/or body of Plaintiff because they knew of the dangerous, hazardous, and toxic properties of AFFF containing PFAS. Defendants failed to provide sufficient warning to purchasers that the use of their AFFF products would cause PFAS to be released and cause the exposure and bioaccumulation of these toxic chemicals in the blood and/or body of Plaintiff.

147.     Though Defendants knew or should have known about the seriousness of the

consequences of failing to warn about the inherent dangers associated with AFFF containing PFAS, Defendants failed to warn of the dangers inherent in the use of the product.

148.    Though Defendants knew or should have known about the reasonably foreseeable hazards to human health and welfare associated with the use of AFFF containing PFAS by firefighters and those in contact with the product, Defendants failed to provide adequate warnings of, or take any precautionary measures to mitigate, those hazards.

149.    Adequate instructions and warnings on the AFFF containing PFAS could have reduced or avoided these foreseeable risks of harm and injury to Plaintiff. If Defendants provided adequate warnings: (a) Plaintiff could have and would have taken measures to avoid or lessen exposure; and (b) end users and governments could have taken steps to reduce or prevent the release of PFAS into the blood and/or body of Plaintiff. Defendants' failure to warn was a direct and proximate cause of Plaintiff's injuries from PFAS that came from the use, storage, and disposal of AFFF containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the AFFF containing PFAS they designed, marketed, manufactured, distributed, released, promoted, and sold, renders the AFFF a defective product.

150.    Defendants were negligent in their failure to provide Plaintiff with adequate warnings or instructions that the use of their AFFF products would cause PFAS to be released into the blood and/or body of Plaintiff and likely cause cancer. As a result of Defendants' conduct and the resulting contamination, Plaintiff suffered severe personal injuries by exposure to AFFF containing PFAS.

151.    Had Defendants provided adequate warnings, firefighters, including Plaintiff, could have taken measures to avoid or lessen their exposure.

152.    Defendants' negligent failure to warn directly and proximately caused the harm to and damages suffered by Plaintiffs.

**COUNT IV – DESIGN DEFECT**

35

153.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

154.     At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

155.     At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

156.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

157.     By virtue of manufacturing, marketing, and selling AFFF containing hazardous and toxic PFAS chemicals, including PFOA and PFOS, Defendants had a strict duty not to place an unreasonably dangerous product into the stream of commerce that would injure others, including Plaintiff.

158.     Defendants knew or should have known: (a) exposure to AFFF containing PFAS is hazardous to human health; (b) the manner in which AFFF containing PFAS was designed, manufactured, marketed, distributed, and sold was hazardous to human health; and (c) the manner in which AFFF containing PFAS was designed, manufactured, marketed, distributed, and could and would release PFAS into Plaintiff and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the blood and/or body of Plaintiff.

159.     Knowing of the dangerous and hazardous properties of the AFFF containing PFAS, Defendants could have designed, manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF that did not contain hazardous and toxic PFAS, PFOA or PFOS.

160.    These alternative designs and formulations were already available, practical, and technologically feasible.

161.    The use of these alternative designs would have reduced or prevented reasonably foreseeable harm to Plaintiff caused by the Defendants' design, manufacture, marketing, distribution, and sale of AFFF containing hazardous and toxic PFAS.

162.    The AFFF containing PFAS that was designed, manufactured, marketed, distributed, and sold by the Defendants was so hazardous, toxic, and dangerous to human health that the act of designing, formulating, manufacturing, marketing, distributing, and selling this AFFF was unreasonably dangerous under the circumstances.

163.    The AFFF, and/or underlying chemicals and/or products added to AFFF, designed, formulated, manufactured, marketed, distributed, and sold by Defendants was defectively designed, and the foreseeable risk of harm could and would have been reduced or eliminated by the adoption of a reasonable alternative design that was not unreasonably dangerous. Defendants' defective design and formulation of AFFF containing PFAS was a direct and proximate cause of the contamination of the blood and/or body of Plaintiff and the persistence and accumulation of PFAS in Plaintiff's blood and/or body.

164.    As designers and manufactures of AFFF firefighting foam, Defendants not only had the ability to alter their product in such a way that maintained the firefighting abilities of the product while eliminating its inherently unsafe character, but were also in the best position to do so.

165.    The link between AFFF containing PFAS chemicals and numerous serious medical conditions are not open and obvious or part of general public knowledge of using AFFF.

166.    Therefore, the inherent risks associated with the use of AFFF far outweigh any firefighting benefits, thereby rendering it unreasonably dangerous.

167.    Defendants' defective design and formulation of AFFF containing PFAS caused the contamination described herein resulting in personal injuries to Plaintiff. As a direct result of

the harm and injury caused by Defendants' defective design and the contamination described herein, Plaintiff has been exposed to AFFF containing PFAS and other toxic substances and has developed cancer.

168.    Defendants' negligent failure to design a reasonably safe product directly and proximately caused the harm to and damages suffered by Plaintiffs.

## COUNT V – STRICT LIABILITY – FAILURE TO WARN

169.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

170.    Defendants knew or should have known that exposure to fluorochemical products presented a substantial danger when used because it is hazardous to human health and the environment.

171.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling fluorochemical products would result in physical harm to Plaintiff.

172.    Ordinary consumers of Defendants' fluorochemical products would not have recognized the risks.

173.    Defendants failed to adequately warn Plaintiff of the potential risks of fluorochemical products.

174.    Adequate instructions and warnings on the fluorochemical products could have reduced or avoided these foreseeable risks of harm to Plaintiff's health.

175.    Had Defendants provided adequate warnings, Plaintiff could have taken measures to avoid or lessen the exposure.

176.    The lack of sufficient warnings was a substantial factor in causing Plaintiff's harm.

177.    Defendants' failure to warn was a direct and proximate cause of Plaintiff's cancer.

178. Defendants' failure to provide adequate and sufficient warnings for the fluorochemical products that they manufactured, marketed, and sold renders the fluorochemicalproducts defective products.

179. Defendants' defective design and formulation of AFFF containing PFAS caused the contamination described herein resulting in personal injuries to Plaintiff. As a direct result of the harm and injury caused by Defendants' defective design and the contamination described herein, Plaintiff has been exposed to AFFF containing PFAS and other toxic substances and has developed cancer.

180. Defendants' failure to warn directly and proximately caused the harm and damages suffered by Plaintiff.

181. Had Defendants provided adequate warnings, firefighters, including Plaintiff, could have taken measures to avoid or lessen their exposure.

182. Defendants' negligent failure to warn was a proximate and/or producing causing of Plaintiffs' damages and injuries as further set forth below.

## COUNT VI – STRICT LIABILITY (STATUTORY)

183. Plaintiffs hereby incorporate by reference the allegations contained in the  preceding paragraphs of this Complaint as if restated in full herein.

184. Plaintiffs assert any and all remedies available under statutory causes of action  from Plaintiffs' state for strict liability against each Defendant.

185. The Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of AFFF, and placed the AFFFF into the stream of commerce containing a defective condition at the time it left control of defendants such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the product.

186. AFFF was in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by the

Defendants.

187.    As a direct, proximate and/or producing result of the Defendants products' aforementioned defects, the Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

188.    The above defects, or any of them, were the proximate and/or producing result of Plaintiffs' injuries and damages, as more particularly set forth below.

189.    By reason of the foregoing, the Defendants are strictly liable in tort to the Plaintiffs for their wrongful conduct and/or warning defects in the AFFF products, or both.


## COUNT VII – STRICT LIABILITY (RESTATEMENT)

190.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

191.    Plaintiffs brings strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

192.    As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold by the Defendants, the AFFF product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including Plaintiff.

193.    The Defendants had available reasonable alternative designs which would have made the AFFF product safer and would have most likely prevented the injuries and damages to the Plaintiff, thus violating state law and the Restatement of Torts.

194.    The Defendants failed to properly and adequately warn and instruct the

40

Plaintiff as to the proper safety and use of the Defendants product.

195.    The Defendants failed to properly and adequately warn and instruct the Plaintiff regarding the inadequate research and testing of the product.

196.    The Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

197.    As a proximate and/or producing result of the Defendants' design, manufacture, marketing, sale, and distribution of the products, the Plaintiff has been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

198.    By reason of the foregoing, the Defendants are strictly liable for the injuries and damages suffered by Plaintiff, caused by these defects in the AFFF product.

## COUNT VIII – FRAUDULENT CONCEALMENT

199.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

200.    Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

201.    Defendants fraudulently concealed from and/or failed to disclose to, or warn Plaintiff and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

202.    Defendants were under a duty to the Plaintiff and the public to disclose and warn of the defective and harmful nature of the products because:

(a) Defendants were in a superior position to know the true quality, safety and efficacy of the Defendants' products;

(b) Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

(c) Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' products from Plaintiff.

203.    The facts concealed and/or not disclosed by Defendants to Plaintiff were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use the Defendants' products.

204.    Defendants intentionally concealed and/or failed to disclose the true defective nature of the products so that Plaintiff would use the Defendants' products.

205.    Plaintiff justifiably acted or relied upon, to Plaintiff's detriment, the concealed and/or non-disclosed facts as evidenced by Plaintiff's use of the Defendants' products.

206.    Defendants, by concealment or other action, intentionally prevented the Plaintiff from acquiring material information regarding the lack of safety and effectiveness of the Defendants' products and are subject to the same liability to the Plaintiff for Plaintiff's pecuniary losses, as though Defendants had stated the non-existence of such material information regarding the Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that the Plaintiff was thus prevented from discovering the truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

207.    As a proximate result of Defendants' conduct, the Plaintiff has been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

## COUNT IX – BREACH OF EXPRESS AND IMPLIED WARRANTIES

208.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

209.    At all times relevant hereto, the Defendants manufactured, marketed,

labeled, and sold the AFFF products that has been previously alleged and described herein.

210.    At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

211.    The Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by the Plaintiffs.

212.    The Plaintiff is within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

213.    The Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury, pain, and cancer.

## COUNT X – NEGLIGENT, INTENTIONAL, AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

214.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

215.    Defendants acts and/or omissions were negligent, intentional, and/or reckless, including Defendants' continued pollution of the environment and resultant exposure of Plaintiff to harmful fluorochemical products, despite knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Plaintiff.

216.    Defendants negligently, knowingly and/or intentionally withheld and concealed material information from and/or affirmatively misrepresented to Plaintiff that they were exposed to harmful fluorochemical products and/or that the fluorochemical products were not causing or

creating any risk of harm to them, despite knowing at the time these concealments and/or misrepresentations were made that the fluorochemical products were causing and would continue to cause harm and/or unacceptable risk of harm to persons, including Plaintiff.

217.    At the time of Defendants' negligent, knowing, and/or intentional acts and/or omissions, it was foreseeable to Defendants, and Defendants were certain and/or substantially certain, that its actions and/or omissions would cause emotional distress to Plaintiff.

218.    Defendants' acts and/or omissions were extreme, outrageous, intolerable, and/or offended the generally accepted standards of decency and morality.

219.    By continuing to expose Plaintiff to harmful fluorochemical products, and continuing to misrepresent to consumers, including Plaintiff, that the fluorochemical products were not and would not cause them harm or risk of harm and/or continuing to withhold and/or conceal from Plaintiff material information on such issues, despite knowing that the fluorochemical products were causing and would continue to cause harm and/or risk of harm, Defendants acted in an extreme, outrageous, and intolerable manner which offended any generally accepted standard of decency and morality.

220.    Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused physical harm, and continue to cause physical harm, to Plaintiff.

221.    Defendants' extreme, outrageous and intolerable actions were a substantial factor in causing Plaintiff to suffer severe physical, mental, and emotional distress.

222.    As a direct and proximate result of Defendants' extreme, outrageous and intolerable actions, Plaintiff has and will continue to suffer severe physical, mental, and emotional distress.

223.    No reasonable person could be expected to endure the mental anguish caused by the knowledge that entities have negligently, knowingly, and/or intentionally exposed them to years of harmful contact with AFFF containing PFOA or PFOS and/or their precursor chemicals, and has

44

furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

## COUNT XI – WANTONNESS

224.    Plaintiffs hereby incorporate by reference the allegations contained in the  preceding paragraphs of this Complaint as if restated in full herein.

225.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Plaintiff.

226.    Defendants breached the duty of care owed to the Plaintiff.

227.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton, as further shown above, and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF products, including Plaintiff.

228.    As a proximate and foreseeable consequent of the actions of Defendants, Plaintiff  was exposed to unreasonably dangerous toxic PFAS containing AFFF, which caused Plaintiff's injury.

## DAMAGES APPLICABLE TO ALL COUNTS

229.    Plaintiffs adopt by reference each and every preceding paragraph of this Complaint as if fully set forth herein and further allege as follows:

230.    Plaintiff VERNON BURKS suffered, sustained and incurred, and in reasonable medical probability, will continue to suffer, sustain and incur, the following injuries and damages as a producing and/or proximate result (or both) of Defendants' conduct, the defective AFFF product, or both, among others:

(a) physical pain, past and future;

(b) mental suffering, past and future;

(c) physical impairment, past and future;

45

(d) physical disfigurement, past and future;

(e) reasonable and necessary medical bills, past and future;

(f) loss of earnings/earning capacity, past and future;

(g) reasonable and necessary attorneys' fees; and

(h) costs of court.

## LOSS OF CONSORTIUM

231.    Plaintiffs adopt by reference each and every preceding paragraph of this Complaint as if fully set forth herein and further allege as follows.

232.    At all material times hereto, Plaintiff Vernon Burks and Plaintiff Lynda Burks were, and are, legally married as husband and wife.

233.    As a result of the negligent, intentional, and/or reckless wrongful acts and omissions committed by the Defendants, Plaintiff LYNDA BURKS was caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

234.    As a proximate and/or producing result (or both) of Defendants' conduct, the defective AFFF product, or both, Plaintiff LYNDA BURKS suffered, sustained and incurred, and will continue to suffer, sustain and incur, the following injuries and damages, among others:

(a) loss of consortium, past and future;

(b) loss of household services, past and future;

(c) loss of society and affection;

(d) loss of assistance; and

(e) loss of conjugal fellowship.

## PUNITIVE DAMAGES

235.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

236.     After further shown above, Defendants engaged in willful, wanton, malicious and/or reckless conduct that was done without regard to the consequences or safety of Plaintiff, and caused the foregoing injuries upon Plaintiff, and disregarding Plaintiffs' protected rights.

237.     Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited Defendants' failure to take all reasonable measures to ensure that Plaintiff was not exposed to PFAS which Defendants knew were linked to serious medical conditions, including cancer.

238.     The conduct of Defendants when viewed objectively from the standpoint of Defendants at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, including Plaintiff.

239.     Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

240.     Defendants have caused significant harm to Plaintiff and have demonstrated a conscious and outrageous disregard for the safety of Plaintiff with implied malice, warranting the imposition of punitive damages.

## TOLLING OF THE STATUTE OF LIMITATIONS
## DISCOVERY RULE TOLLING

241.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

242.     Plaintiffs had no way of knowing about the risk of serious injury associated with the use of and exposure to AFFF until very recently.

243.     Within the time period of any applicable statute of limitations, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful

to human health.

244.    Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that AFFF could cause personal injury.

245.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

## FRAUDULENT CONCEALMENT TOLLING

246.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

247.    All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

248.    Instead of disclosing critical safety information regarding AFFF, Defendants have consistently and falsely represented the safety of AFFF products.

249.    This fraudulent concealment continues through present day.

250.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

## ESTOPPEL

251.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

252.    Defendants were under a continuous duty to consumers, end users, and other persons coming into contact with their products, including Plaintiff, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF.

253.    Instead, Defendants knowingly, affirmatively, and actively concealed safety

48

information concerning AFFF and the serious risks associated with the use of and exposure to AFFF.

254.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## TOLLING PURSUANT TO 42 U.S.C § 9658

255.    Plaintiffs did not know and could not have reasonably known that Plaintiff's personal injuries were caused by or contributed to by the use of and exposure to AFFF until sometime within the past year.

256.    The federally required commencement date for the running of the statute of limitations begins running on the date Plaintiff knew or reasonably should have known that the personal injury was caused or contributed to by his exposure pursuant to 42 U.S.C. § 9658.

257.    Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that AFFF could cause personal injury.

258.    For these reasons, applicable state statutes of limitations have been tolled by operation of the discovery rule pursuant to 42 U.S.C. § 9658 with respect to Plaintiffs claims.

## DEMAND FOR JURY TRIAL

259.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request trial by jury and have tendered to required fee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the Court enter judgment against the Defendants on each of the above-referenced claims as follows:

(a) Finding Defendants jointly, severally and solidarity liable for past, present and future damages suffered by Plaintiffs;

(b) Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of

enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

(c) Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determine at trial of this action;

(d) Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

(e) An order finding Defendants liable for conspiracy in the manner described herein;

(f) Pre-judgment interest;

(g) Post-judgment interest;

(h) Awarding Plaintiffs reasonable attorneys' fees when applicable;

(i) Awarding Plaintiffs the costs of these proceedings; and

(j) Such other and further relief as this Court deems just and proper.

Dated: June 5, 2023

Respectfully submitted,

HOUSSIERE, DURANT & HOUSSIERE, LLP

By:   /s/ Michael R. Null
CHARLES R. HOUSSIERE, III
Attorney-in-charge
Texas Bar No. 10050700
Attorney in Charge
choussiere@hdhtex.com
Michael R. Null
Texas Bar No. 24126251
mnull@hdhtex.com
1990 Post Oak Blvd., Suite 800
Houston, Texas 77056-3812
Telephone:  713-626-3700
Facsimile:  713-626-3709

ATTORNEYS FOR PLAINTIFFS